FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2023 SEP 22 PM 1:50

MARGARET BOTKINS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MERIT ENERGY OPERATIONS I, LLC, <br><br> Petitioner, <br><br> VS. <br><br> EASTERN SHOSHONE AND NORTHERN ARAPAHO TRIBES, <br><br> Respondents. | Case No. 23-CV-063-SWS |

# ORDER ON MOTION TO DISMISS AND PETITION TO CONFIRM ARBITRATION AWARD

The above-captioned matter comes before the Court on Merit Energy Operations I, LLC (hereinafter "Merit") Petition to Confirm Arbitration Award (ECF No. 1) and Eastern Shoshone and Northern Arapaho Tribes (hereinafter "Tribes") Motion to Dismiss and for an Award of Fees and Costs. (ECF No. 15.) The Court, having carefully reviewed the parties' submissions and being otherwise fully advised in the premises, FINDS and ORDERS as follows:

## NATURE OF THE DISPUTE

On April 23, 2023, Merit filed its Petition to Confirm Arbitration Award (ECF No. 1.)[1]. In response the Tribes have moved to dismiss the Petition and seek an award of fees and costs under the terms of the oil and gas lease for the Circle Ridge Field located on the

---

[1] Absent specific citation otherwise all "ECF No." cites are to the filings in this case, 23-CV-063.

Wind River Indian Reservation (hereinafter the "Lease"). (ECF No. 15 and 16 at 6-7.) The Tribes' basis for dismissal is an asserted lack of this Court's subject matter jurisdiction over the Petition to Confirm under Section 9 of the Federal Arbitration Act (hereinafter "FAA"). (ECF No. 16.) Relying upon the recent Supreme Court decision in *Badgerow v. Walters*, 596 U.S. ---, 142 S.Ct. 1310 (2022), the Tribes assert Merit's Petition fails to identify any federal question upon which this Court's jurisdiction can be independently based. Moreover, contend the Tribes, this Court cannot "look through" the Petition to the underlying dispute to find a federal question. (ECF No. 16 at 2-3.) The Tribes assert that a mere request to confirm an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, is insufficient to vest this Court with federal question subject matter jurisdiction. *Id.* Merit counters that in this case the federal question exists because the Lease, which gave rise to the arbitration, is governed by federal, not state law. (ECF No. 20 at 2-3.) The Tribes correctly note federal question jurisdiction must exist independent of the FAA itself and this Court is not allowed to "look through" the face of the Petition to the underlying nature of the dispute to discover a federal question. *Badgerow* at 1317-18. Nonetheless, the Lease giving rise to the dispute was approved under and is governed by federal law, thus creating a federal question. In addition to the Lease being governed by federal law, the origin and sovereignty of the Tribes and limits on state court jurisdiction necessarily result in the matter arising under the laws or treaties of the United States.

## BACKGROUND

These parties are no strangers to arbitration or litigation.[2] Merit is a successor in interest to the Lease (*see* 21-CV-025; ECF No. 1-2 at 3-39),[3] originally entered into between the Tribes and Marathon Oil Company (hereinafter "Marathon") in 2000, with the approval of the Secretary of Interior in February 2001. (21-CV-025; ECF No. 1-2 at 2). Pursuant to the Lease dispute resolution clause (*Id.* at 29-30) arbitration previously ensued between these same parties in case No. 21-CV-025-F. The dispute at that time was over the extent of Merit's preferential right to renew the Lease. After completion of that arbitration, challenges were made to the arbitrator's decision. Ultimately, an Order Confirming Arbitration Award in that case (ECF No. 57) was issued by Judge Freudenthal on January 24, 2022, rejecting Merit's request to partially vacate the award and granting the Tribes' counter petition to confirm the arbitration award. *Id.* As a result, Merit's Lease terminated, triggering the next round of arbitration and this litigation.

Following termination of the Lease, Merit sought arbitration when the parties were unable to agree on the value of Merit's equipment that the Tribes elected to purchase under Section 10 of the Lease. (23-CV-063; ECF No. 1-2 at 4-6.) Section 10 allows the Tribes to purchase Merit's equipment that the Tribes elect to retain for operating the

---

[2] The Court takes judicial notice of the parties' prior litigation and filings involving the same oil and gas Lease governing the Circle Ridge Field on the Wyoming Wind River Reservation *Merit Energy Operations I, LLC v. Eastern Shoshone & Northern Arapaho Tribes,* 21-CV-25-F (2021); and *Merit Energy Operations I, LLC v. MI3 Petroleum Engineering Corp.,* 20-MC-113 (2020); and *Merit Energy Co. LLC v. United States Department of the Interior,* 20-CV-032 (2020).

[3] Pursuant to Section 33 of the Lease, the parties' Lease and its terms are confidential "except as may be required by law or as necessary in the ordinary course of business . ..." The Lease was filed under seal in *Merit Energy Operations I, LLC v. Eastern Shoshone & Northern Arapaho Tribes,* 21-CV-025 (D.Wyo. 2021) as Exhibit B to Merit's Petition and is identified in the CM/ECF system as ECF No. 1-2, pages 2-39. The Court takes judicial notice of the Lease.

3

Lease production. (21-CV-025; ECF No. 1-2 at 21). It also requires that the Tribes "pay . . . such sum as agreed to by the parties, or, if the parties cannot reach agreement, a reasonable price shall be fixed by a board of three appraisers . . . ." *Id.* The parties were unable to agree upon a price.

In addition, a dispute arose over Merit's access to the leasehold property to remove its remaining unwanted equipment. (23-CV-063; ECF No. 1-2 at 6-9.) Section 20 of the Lease provides "any dispute between the parties which is contractual in nature, whether as to the construction or operation of this Lease or the respective rights and liabilities of the parties hereunder, shall be subject to arbitration under this Section." (21-CV-025; ECF No. 1-2 at 31.) Consistent with Section 20, but not without challenge, the parties engaged in another round of arbitration to address these issues, including the use of three appraisers to determine a valuation of the equipment, which was then reviewed by the arbitrators. (23-CV-063; ECF No. 1-2; 1-3 and 1-4 (Exhibits A, B and C to the Petition)). The arbitrators' three awards addressed an initial challenge to the arbitrability of the issue concerning value of Merit's equipment (Exhibit B); an Interim Award addressing the reasonable price for Merit's equipment and the effect of an ordinance enacted more than five weeks following the Board's Report on equipment valuation (Exhibit C); and a Final Award confirming the equipment award and denying both parties respective request for attorneys' fees, costs and the expenses of the arbitration proceedings (Exhibit A).

Merit's Petition to Confirm Arbitration Award alleges that the arbitration resolved issues arising under the Lease concerning leasehold access and the appraisal of oil and

gas equipment (Section 10) relating to the Lease. (23-CV-063; ECF No. 1 at ¶¶'s 2-4.) Merit asserts this Court has jurisdiction under 9 U.S.C. § 9 and 28 U.S.C. § 1331. Merit alleges the Lease between these parties was issued "pursuant to the Indian Mineral Development Act ("IMDA"), 25 U.S.C. § 2101, *et seq.,* the Federal Oil and Gas Royalty Management Act, 30 U.S.C. § 1701 *et seq.*, and other applicable federal laws and regulations, including but not limited to 43 C.F.R. § 3160 and 30 C.F.R. § 300." (23-CV-063; ECF No. 1 at ¶13.) The business councils for the respective Eastern Shoshone and Northern Arapaho Tribes ratified the Lease which was thereafter approved by the Secretary of Interior pursuant to the IMDA under 25 U.S.C. § 2102(a). In addition, the Lease provides:

> Lessor and Lessee acknowledge that non-tribal courts may have jurisdiction over Lessees activities, matters arising under the lease, or reasonably related thereto, provided such acknowledgment shall not constitute Lessor's consent or agreement to such jurisdiction.

(21-cv-025; ECF No. 1-2 at § 22.) The Lease further provides under Section 23 "GOVERNING LAW: CHOICE OF LAW"

> This lease shall be governed by the laws of the Shoshone and Northern Arapaho Tribes of the Wind River Reservation, and the laws of the United States now in effect, or amended or enacted hereafter, as applicable.

*Id.* at § 23. The Court will add further details as necessary to address the legal issues.

## DISCUSSION

As set forth below this Court believes, on the face of the Petition, without looking through to the underlying dispute, this is not your typical state enforcement of a settlement agreement, but rather federal question jurisdiction exists because the

5

interpretation and application of federal law to the Lease which incorporates the arbitration obligation. Separate and apart from federal law application to the Lease, the atypical contractual relationship, involving Tribal sovereignty and limits on tribal court jurisdiction further support the existence of a federal question jurisdiction to enforcement of the Lease.

Federal district courts have limited jurisdiction, the boundaries of which are defined by statute, subject to constitutional limitation. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). With some limited statutory exceptions, the two primary sources of federal district court jurisdiction are suits between citizens of different States, diversity jurisdiction (28 U.S.C. § 1332(a)[4], and disputes involving federal-question cases (28 U.S.C. § 1331).

Because the FAA "'does not create any independent federal-question jurisdiction," the party seeking confirmation must demonstrate a jurisdictional basis under either 28 U.S.C. § 1331 (federal question) or § 1332 (diversity). Second, it must be shown that the parties agreed, either explicitly or implicitly, that the arbitration award would be subject to judicial confirmation." *Andrew v. Walzl/Colorado,* 829 F.App'x. 872, 874 (10th Cir. Oct. 9, 2020)(citing with approval *International Label Service, Inc. v. Engineered Data Products, Inc.*, 15 F.App'x 717, 719 (10th Cir. 2021). In *Andrew* the court rejected plaintiff's argument, seeking to confirm an arbitration award, that §§ 9 or 12 of the FAA independently created federal question jurisdiction. *Id.* at 874. It also rejected the

---

[4] In this case diversity jurisdiction does not exist because Indian Tribes are not citizens of any state for purposes of diversity jurisdiction. *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993) (existing authority holds "that Indian tribes are not citizens of any state for purposes of diversity jurisdiction.")

6

assertion that the "contractual obligation" to arbitrate was a source for federal question jurisdiction, finding "that his agreement is neither a law that creates a claim for relief nor a mechanism providing relief that depends on resolving a federal question." *Id*. In this case the Lease provides a mechanism for relief resolving a federal question.

Consistent with *Andrew* the Supreme Court recognized in *Badgerow v. Walters*, 596 U.S., ---, 142 S.Ct. 1310 (2022), that the FAA authorizes parties to arbitration agreements to file specified actions in federal court to compel, confirm, vacate, or modify arbitral awards, but it does not itself create federal jurisdiction. *Id*. at 1316. An "independent jurisdiction basis" must exist apart from the FAA. *Id*. This requires that a party seeking to vacate or confirm an arbitral award to "identify a grant of jurisdiction, apart from Section 10 [or 9] itself, conferring access to a federal forum." *Id*. Thus, the claim must arise under federal law.

A case arises under federal law if the facts alleged on the face of the petition or application establish that either federal law creates the cause of action or that the party's right to relief necessarily depends on resolution of a substantial question of federal law. *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

Due to the nature of their origin, regulatory scheme and statutory requirements, numerous federal courts have held enforcement and interpretation of oil and gas leases on Indian trust lands, such as the Lease involved in this case, create a federal question. *See Tenneco Oil Company v. SAC and Fox Tribe of Indians of Oklahoma*, 725 F.2d 572, 575-76 (10th Cir. 1984)(finding federal question jurisdiction present where terms of lease

7

subjected lessee to regulations of the Secretary of Interior and subject to existing laws enacted by Congress); *Superior Oil Co. v. United States*, 798 F.2d 1324, 1330 (10th Cir. 1986) (subject to exhaustion of tribal court remedies, non-Indian corporations holding oil and gas leases on tribal lands that tribe allegedly sought to terminate by subsequent enactment of tribal ordinances and refusal to allow access to lands for seismic study absent renegotiation of lease terms stated federal question); *Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Tex.*, 261 F.3d 567, 573-75 (5th Cir. 2001) (federal statutes and regulations governing tribal oil and gas leases create specialized subset of contracts and are adequate to invoke federal question jurisdiction involving issues as to whether tribe and tribal council members could cancel leases or declare them void for alleged breaches); *PetroShale (US), Inc. v. Continental Resources, Inc.*, 17-cv-217; 2018 WL 11513426 (D. North Dakota August 8, 2018) (due to extensive federal regulatory scheme applying to tribal oil and gas leases, the court finds that such leases are a specialized subset of contracts that support federal question jurisdiction); *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1135-37 (8th Cir. 2019) ("unlike 'routine contracts' that are 'governed by general common law principles of contract,' oil and gas leases on federally-held Indian trust land are governed by federal law;" tribal courts' adjudicative authority is limited to cases arising under tribal law and tribal court lacked jurisdiction over action involving federal oil and gas leases).

In *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982) the court rejected application of state law precedent finding it "is not controlling here because we are concerned with oil and gas leases on Indian lands which are governed by federal

8

law." *Id.* at 1341. The court in *Andrus* noted, in addition to the federal policy and functions, federal procedures and regulations necessitate application of a uniform federal rule. *Id.* at 1341 n. 11a.

In this case the Tribes, relying upon *Badgerow* contend "the face of Petitioner's Petition, the only document this Court may rely on, merely seeks confirmation of an arbitration award which in and of itself is not a federal question." (ECF No. 31 at 4.) The Court believes this ignores that the arbitration requirement is part of the Lease, the interpretation and application itself creating a federal question. In addition, the Tribes argument overlooks the result of their argument, given the unique identity of the parties, and sovereignty of the Tribes, would leave the parties without a forum for enforcement of the arbitration award.

The issue addressed in *Badgerow* was where a district court can "look to determine whether an action brough under Section 9 of the FAA has an independent jurisdictional basis." *Id.* at 1316. The Court observed:

> An obvious place is the face of the application itself. . .. Or if it alleges that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief, then § 1331 gives the court federal-question jurisdiction. And their applications raise no federal issue. Recall that the two are now contesting not the legality of Badgerow's firing but the enforceability of an arbitral award. That award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims. See <u>Vaden, 556 U.S., at 63, 129 S.Ct. 1262</u>. And quarrels about legal settlements—even settlements of federal claims—**typically involve only state law, like disagreements about other contracts.** See <u>Kokkonen, 511 U.S., at 378–382, 114 S.Ct. 1673</u>. So **the District Court here, . . . had to go beyond the face of the Section 9 and 10 applications to find a basis for jurisdiction.** . . . It had to proceed downward to Badgerow's employment action, where a federal-law claim satisfying § 1331 indeed exists. In other words, **the court had to**

> **look through the Section 9 and 10 applications to the underlying substantive dispute, although that dispute was not before it.**

*Id.* at 1316-17 (bold emphasis added). This case is not "typical." The *Badgerow* Court determined, based upon the unique language used in Sections 9 and 10 of the FAA, that the court cannot look through the face of the application to the underlying substantive dispute to find federal question jurisdiction to confirm or vacate an arbitration award. *Id.* at 1317-18. This Court believes the issues in this case are distinguishable. The face of the petition in this case raises contractual issues which themselves give rise to and are governed by federal, not state law. In addition, the nature of the parties to the Lease and their sovereignty makes this case anything but typical. The petition is not based on state law, nor can it be given the Tribes' sovereign status.

As to the federal question issues. Judge Kaplan noted in *Trustee of New York Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, 2022 WL 2209349 (S.D. New York 2022), involving an arbitration arising out of ERISA:

> Here, the petition clearly alleges that both the Plan Trustees and White Oak are ERISA fiduciaries, that the IMA containing the arbitration agreement gave rise to White Oak's ERISA fiduciary obligations, and that White Oak expressly warranted and agreed to serve as a fiduciary and investment manager under ERISA. It is plain from the face of the Plan's petition that the narrow contractual rights before the court "relate to" an ERISA plan and are governed exclusively by federal law. Accordingly, the Plan's petition is not a state-law based Section 9 application as was at issue in *Badgerow*. Since it seeks recovery exclusively under the laws of the United States and does not implicate 28 U.S.C. § 1331's exceptions, the Court is obliged to hear the suit. White Oaks' motion must be denied.

*Id.* at 5. Like the ERISA issues in *White Oak*, the Lease terms and obligations at issue, which contain the arbitration provision, are governed and controlled by federal law, not

state or tribal law. *Andrus supra* at 1341. Thus, Merit's petition is not a state-law based § 9 application as in *Badgerow*. Merit's petition seeks recovery under the Lease, which is governed by federal law, creating a federal question under § 1331 and supplying an independent jurisdictional basis from the FAA.

From *Badgerow* the Tribes turn to *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 946 (9th Cir. 2004) to support their assertion that an action seeking enforcement of the arbiters' award does not present a federal question. *Id.* at 951-52.

This Court believes that applying the holding in *Badgerow* and viewing the application for relief on its face, a federal question supporting jurisdiction under § 1331 exists, independent of § 9 of the FAA. The Lease, as approved by the parties and the Secretary of Interior requires all Lease disputes to be submitted to arbitration. In fact, prior to this arbitration over equipment and access under the Lease the parties engaged in arbitration concerning Merit's preferential right to renew under the Lease, which the Tribes then Petitioned for Confirmation in this Court (21-cv-025; ECF No. 15) and Judge Freudenthal ultimately granted. (21-cv-025; ECF No. 57.)

In addition, unlike in *Peabody*, this is not a case where the agreement to arbitrate and the negotiated settlement were reached outside of and independent from the terms of the parties' original federal lease agreements. *Id.* at 947-48. In *Peabody* the amendment to the applicable leases hadn't been approved by the Secretary of Interior at the time the royalty dispute arose. In addition, the parties independently reached a negotiated settlement between themselves, outside the arbitration process, but then had their settlement memorialized in an arbitration award. *Id.* at 947. This is particularly

significant because, as discussed above, the interpretation and application of federal lease agreements themselves give rise to federal question jurisdiction. *Tenneco Oil Co. supra.* at 575-76. In addition, Section 23 of the Lease and the Petition to Confirm notes the parties' acknowledgment that the Lease is governed by applicable federal law.

There is an additional wrinkle and material distinction from *Peabody*. Unlike in *Peabody* part of the underlying dispute that arose and was part of the arbitration process in this case was the applicability of an ordinance that was passed on October 7, 2022, by the Wind River Intertribal Council. (ECF No. 1 at ¶¶s 37-38; Exhibit C Interim Award.) This ordinance "Wind River Indian Reservation Oil Field Transition Ordinance" was adopted nearly 18 months after the Lease had expired and five weeks after the appointed Board had determined "a reasonable price" for the oil field equipment being purchased by the Tribes. (ECF No. 1-4 at 12-18.) The Ordinance was adopted to avoid the results of the contractually required appraisal under the Lease. *Id.* at 18. Ironically, in *Peabody* the court distinguished cases from other jurisdictions, finding that federal question jurisdiction existed such as *Comstock Oil & Gas, supra,* by noting that the contracts at issue in those other cases created federal questions because they raised questions as to the "tribal government's authority to apply tribal law [ordinances] to the commercial activities of non-Indian companies, or the validity of mineral leases themselves, which are both questions that can be answered only by reference to federal statutory and common law." *Id.* at 950. Unlike *Peabody*, in the case at bar, the ordinance enacted by

12

the Tribe and its effect on the Lease obligations was an issue, controlled and determined by federal law, raised and determined in the arbitration.[5]

As set forth on the face of the application itself, the arbitration was initiated pursuant to the terms of the Lease, a federal oil and gas lease approved by the Tribes and Secretary of Interior. (ECF No. 1 at ¶ 13.) The face of the application notes that the subject of the disputes arbitrated, pursuant to the terms of the Lease, were matters involving the interpretation and application of the valuation of Merit's property that the Tribes, pursuant to Section 10 of the Lease sought to purchase. *Id.* at ¶ 19. Merit also sought a determination of its right to leasehold access to remove property and comply with its obligations under the Lease upon termination. *Id.* at ¶ 10. Because the Lease is governed by federal, not state law, Merit's petition was not a state law-based Section 9 application for confirmation. Moreover, because of the Tribes' sovereign nature and the subject matter of the Lease between the parties, this was not a typical matter that could be submitted to state court, but rather it was an "action[] arising under the . . . laws, or treatises of the United States." 28 U.S.C. § 1331.

## CONCLUSION

For those reasons set forth herein, the Court finds it has federal question jurisdiction over this matter and the Northern Arapaho and Eastern Shoshone Tribes'

---

[5] As noted above, to accept the Tribes' argument and find *Badgerow* precludes a federal court from exercising jurisdiction in this case would appear to leave the parties without a forum for enforcement of the arbitration award. *See Kodiak Oil & Gas v. Burr*, 932 F.3d 1125, 1236-38 (8th Cir. 2019 (tribal courts' adjudicative authority limited to cases arising under tribal laws and tribal courts' lack jurisdiction to hear issues concerning federal oil and gas leases on federally held Indian trust lands governed by federal law and tribal court lacked jurisdiction over non-Indians). A state court lacks subject-matter jurisdiction over this matter. *See Ute Indian Tribe & Ouray Reservation v. Lawrence*, 22 F.4th 892, 907 (10th Cir. 2022).

Motion to Dismiss and for an Award of Fees and Costs (ECF No. 15) will be DENIED. The Court will GRANT Merit's Petition to Confirm Arbitration Award (ECF No. 1.) The Clerk of Court is directed to enter judgment for Merit confirming the Final Award (ECF No. 1-2 (Exhibit A)) and close the case.

Dated this 22nd day of September, 2023.

                                    Scott W. Skavdahl
                                    United States District Judge